This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant April Brown has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children and granted permanent custody of the children to the Summit County Children Services Board ("CSB"). This Court affirms.
 I
CSB's involvement in this case stems from Appellant testing positive for cocaine after the birth of her first child. On September 5, 2000, Appellant gave birth to D'Zyre Brown.[1] Appellant, who claims that she was not aware of her pregnancy, called 911 after giving birth in her parent's home. Tests conducted at the hospital revealed that Appellant had cocaine in her system at the time of the birth.[2] Upon allegations of dependency and neglect, CSB was granted an emergency order of custody for D'Zyre. On November 27, 2000, D'Zyre was found dependent and the emergency custody order was continued. On December 4, 2000, CSB was granted temporary custody of D'Zyre. The temporary custody was continued in March and June and on July 23, 2001, CSB filed for permanent custody of D'Zyre.
On July 7, 2001, Appellant gave birth to a second child, Mark Ingram, Jr.[3] On July 10, 2001, CSB was granted an emergency order of custody because Mark, Jr. and Appellant tested positive for cocaine. On August 9, 2001, after continuing the emergency order, CSB amended Mark, Jr.'s case plan and moved for permanent custody. Mark, Jr. was subsequently found dependent and emergency custody was continued.
From the time D'Zyre was born until CSB filed for permanent custody of both D'Zyre and Mark, Jr., CSB worked with Appellant in an attempt to return D'Zyre and Mark, Jr. to her. Specifically, Appellant's case plan required her to obtain proper housing and complete drug treatment and parenting classes with Mark Ingram, Sr. At the time CSB filed for permanent custody, Appellant had failed to satisfy her case plan. CSB's motions for permanent custody of D'Zyre and Mark, Jr. were joined for purposes of the permanent custody trial. On October 2, 2001, the trial court terminated Appellant and Mark Ingram, Sr.'s parental rights as to D'Zyre and Mark, Jr. and granted permanent custody of both children to CSB. Appellant has appealed the decision, asserting one assignment of error.
 II Assignment of Error THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST.
In her sole assignment of error, Appellant has contended that the trial court erred in granting permanent custody of the children to CSB because that action was against the manifest weight of the evidence. Specifically, Appellant has asserted that the state did not meet its burden of establishing that terminating her parental rights and placing the children in the permanent custody of CSB was in the children's best interest.[4] This Court disagrees.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court judgment, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. While this Court considers witness credibility, it also recognizes that the trial court is in the best position to determine the credibility of witnesses. See State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Karches, 38 Ohio St.3d at 19.
The termination of parental rights is governed by R.C. 2151.414. While terminating parental rights is an alternative of last resort, it is authorized when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights with regard to a child, who has not been abandoned, orphaned, or in the temporary custody of a public service agency for at least twelve months of the prior twenty-two month period, the court must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1); see also, In re William S. (1996), 75 Ohio St.3d 95, 99. As previously discussed, Appellant has only argued that the trial court did not have before it clear and convincing evidence that terminating custody and granting permanent custody to CSB was in the children's best interests.
To satisfy the best interest prong of the permanent custody test, a trial court must find that the grant of permanent custody to the public service agency, in this case, CSB, is in the best interest of the child or children. See R.C. 2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95, 97-98. When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must:
 "[C]onsider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[5].
The trial court in the case sub judice heard testimony from the director of information services and the diagnostic coordinator of the Community Health Center, an alcohol and drug counselor from the Akron Health Department, a social worker from the protective services department of the Summit County Children Services, Mark Ingram, Sr., Appellant, and a guardian ad litem, who was appointed to represent the interests of both children. The trial court also admitted into evidence drug test results concerning Mark Ingram, Sr. and Appellant, as well as Appellant's medical records from the Community Health Center and the Morley Health Center.
The testimony at the permanent custody trial established that Appellant has a history of cocaine use. CSB first became aware of Appellant's cocaine problem when she tested positive for the drug after giving birth to D'Zyre. When confronted with the test results, Appellant denied using cocaine. Even after two subsequent positive tests in 2000, Appellant continued to deny she had a cocaine problem. Appellant first admitted her cocaine use when she gave birth to Mark, Jr. and the tests conducted after his birth showed the presence of cocaine in both of their systems. Appellant admitted to CSB that she knew she was pregnant and used cocaine. The record includes numerous instances of Appellant testing positive and denying use and testing negative but admitting cocaine use.
As part of her case plan with CSB, Appellant was required to participate in and complete drug treatment. The evidence at the trial showed that she never completed treatment and that she continued to use drugs while attending counseling. The counselor from the Akron Health Department testified that Appellant is in denial of the impact her cocaine use has on her life and that her skewed judgment may affect her ability to care for D'Zyre and Mark, Jr. Appellant testified that she uses cocaine to deal with stress. Appellant also admitted during the trial that she used cocaine two weeks prior to the trial. Due to Appellant's cocaine abuse, the counselor from the Akron Health Department testified that Appellant's drug problem required residential treatment. The social worker joined in the counselor's concerns over Appellant's drug problems and added that Ingram has a history of alcohol abuse and tested positive for cocaine on September 9, 2001.
Appellant's cocaine use has also caused health problems for D'Zyre and Mark, Jr. Evidence at trial established that both children have shown signs that they were affected by Appellant's drug use while she was pregnant. D'Zyre and Mark, Jr.'s symptoms include sleeping problems, being jittery, becoming very easily agitated, crying excessively, and being difficult to console. Mark, Jr. has also suffered from feeding problems.
Testimony also involved CSB's concern over Appellant's living situation. Appellant testified that she lives with Mark Ingram, Sr. in his Section 8 one-bedroom apartment. When asked if she thought a one-bedroom apartment was suitable for two adults and a child, and now two children, Appellant responded "I was raised in a one-bedroom apartment, I came out fine[.] * * *" When questioned about his apartment, Ingram admitted that having Appellant live with him violates his lease. He explained that he had an appointment scheduled to report Appellant's residency and to try and find a bigger apartment. But he also admitted that if Appellant is not approved to live in his Section 8 housing he does not know where they will live.
The social worker testified that D'Zyre and Mark, Jr. have been living with the same foster family since their births and that the foster parents are both highly involved in their lives. Further, the foster parents have expressed an interest in adopting both children.
Because of the children's young age at the time of the trial, their wishes were expressed through the guardian ad litem. A trial court may view the children's wishes "as expressed * * * through the children's guardian ad litem, with due regard for the maturity of the children." R.C. 2151.414(D)(2). The guardian testified that Appellant and Ingram participate in visitation with the children, but that they do not appear to work as a team and that the visitation monitors have to make suggestions on how to play and deal with the children. The guardian also testified that the children are happy and pleasant in their foster home. After visiting the children in their foster home and during visitations with Appellant and Ingram, the guardian recommended that permanent custody be granted to CSB.
Given the evidence before the trial court that Appellant repeatedly failed to comply with her case plan by failing to acquire proper housing, not completing parenting classes or drug treatment, and continuing to use drugs, this Court cannot say that the trial court lost its way in concluding that granting permanent custody to CSB was in the children's best interest. Accordingly, Appellant's sole assignment of error is overruled.
 III
Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
SLABY, P.J., CARR, J. CONCUR.
[1] Paternity tests established that Mark Ingram, Sr., Appellant's boyfriend, is D'Zyre's father.
[2] The record shows that D'Zyre was not tested for drugs or alcohol.
[3] Appellant contends that Mark Ingram, Sr., is also the father of this child, but a paternity test has not been conducted.
[4] Appellant did not argue on appeal that the trial court erroneously found that the children could not or should not be placed with either parent within a reasonable time. See In re William S. (1996),75 Ohio St.3d 95, 99. Therefore, this Court will not address that issue.
[5] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.